[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-12635
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 4, 2011
JOHN LEY
CLERK

Agency No. A089-086-811

ABOU RAWASH HASSAN ABDEL MOATY ZAKARIA,
a.k.a. Abou Zakaria,
a.k.a. Tony Zakaria,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(March 4, 2011)

Before HULL, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

Abou Rawash Hassan Abdel Moaty Zakaria seeks review of the Board of

Immigration Appeals's (BIA) final order affirming the Immigration Judge's (IJ)

denial of his application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture (CAT). Upon review of the record, the petition is denied.

I.

Zakaria entered the United States with his wife and children as a nonimmigrant visitor in September 2007. Under his visitor's visa, he was permitted to stay until March 1, 2008; he received an extension to stay until August 1, 2008. Although a native and citizen of Egypt, Zakaria had entered Germany on a work visa in 1993 and had received an offer of permanent residency in October 2003.

In June 2008, Zakaria received a Notice to Appear issued by the Department of Homeland Security, charging him with violations as a nonimmigrant alien present and working in the United States in violation of 8 U.S.C. § 1227 (a)(1)(B) and (a)(1)(C)(i). Zakaria filed an application for asylum and withholding of removal, based upon his religion and membership in a social group, and for relief under CAT.

At his removal hearing, Zakaria argued that he would be in danger if he were deported to Egypt because he had converted from Islam to Christianity in 2003 and when he revealed this to his family on his last visit to Egypt they

2

rejected his conversion and threatened him. Although Zakaria had obtained German residency in 2003, he explained that he never felt he belonged there, and that he had lost his status in March 2008 after remaining outside of Germany for more than six months. The IJ denied Zakaria's applications for asylum, withholding of removal, and CAT protection, concluding that he had been firmly resettled in Germany where he lived from 1993 until coming to the United States in 2007, and that Zakaria had failed to show that he would more likely than not be persecuted or tortured upon returning to Egypt. Zakaria appealed to the BIA, which dismissed his claims. This petition followed.

## II.

We review only the BIA's decision, except to the extent that it adopts the IJ's opinion or reasoning. *Najir v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). Because the BIA's decision did not expressly adopt the IJ's opinion or reasoning concerning the firm resettlement rule, we only review the BIA's decision as to that issue. *See Imelda v. U.S. Att'y Gen*, 611 F.3d 724, 728 (11th Cir. 2010). Further, we review administrative fact findings under the substantial-evidence standard, and must affirm the decision if, when viewing the evidence in light most favorable to the decision, they are supported by reasonable, substantial, and probative evidence. *Adefemi v. Ashcroft,* 386 F.3d 1022, 1026-27 (11th Cir.

2004) (*en banc*).  We will only reverse a finding of fact where the record compels

it, and not where it merely supports a contrary conclusion.  *Id*. at 1027.

III.

A.

Zakaria argues that the BIA erred in concluding that he was firmly resettled

in Germany because he was not fleeing from religious persecution at the time he

lived there.  Zakaria contends that his fear of religious persecution began once he

lost his German residency in 2008 because he would have to return to Egypt if

deported from the United States.  The government counters that Zakaria lived in

Germany from 1993 through 2007, was offered permanent residency, and was

firmly resettled there, thus barring him from claiming asylum in the United States.

Under the INA, an applicant is not eligible for asylum is he was "firmly

resettled in another country prior to arriving in the United States."  INA §

208(b)(2)(A)(vi), 8 U.S.C. § 1158 (b)(2)(A)(vi).  "An alien is considered to be

firmly resettled if, prior to arrival in the United States, he or she entered into

another country with, or while in that country received, an offer of permanent

resident status, citizenship, or some other type of permanent resettlement."

8 C.F.R. § 1208.15.  An alien can be excepted from the firm resettlement rule if

> (a) his or her entry into that county was a necessary consequence of his
> or her flight from persecution, . . . he or she remained in that county only

4

as long as was necessary to arrange onward travel, *and* . . . he or she did not establish significant ties in that country; or

(b) conditions of his or her residence in that country were so substantially and consciously restricted by the authority country of refuge that he or she was not in fact resettled.

*Id*. at § 1208.15(a)-(b) (emphasis added).

The record supports the BIA's determination that Zakaria had firmly resettled in Germany and that his circumstances do not place him within the exceptions to the firm resettlement rule. Zakaria admitted that he received an offer of permanent residency in 2003. Although he did not initially move to Germany because he feared religious persecution, he returned to Germany after he was threatened by family members while visiting Egypt in 2005. Furthermore, he still enjoyed Germany's offer of permanent residency when he came to the United States in 2007. The fact that this status was subject to abandonment for remaining outside of Germany for more than six months does not affect our analysis.

Zakaria lived in Germany for fourteen years, married and had children while there, and made two trips to Egypt, one before and one after receiving his offer of permanent residency. Although Zakaria points to the fact that he remained in Germany because two of his children reside in the German foster care system,[1] the

---

[1]Zakaria has two children from his first marriage that ended in divorce and two children with his current wife. According to Zakaria, his first wife told the German authorities that he was Muslim, which he was at the time, and that he was planning to kidnap the children and take

BIA determined that this did not constitute such a substantial restriction on his residence as to bring him within an exception to the firm resettlement rule. Because substantial evidence in the record supports the BIA's findings, it did not err in concluding that Zakaria's asylum application is barred.

B.

Zakaria also argues that the BIA erred in concluding that he was not entitled to withholding of removal or CAT protection, avenues of relief that are not barred by the firm resettlement rule. We review a denial of an application for withholding of removal under the substantial-evidence standard. *Imelda,* 611 F.3d at 727-28. Under the INA, the Attorney General may not remove an alien to a country where it is more likely than not that his "life or freedom would be threatened because of [his] race, religion, nationality, membership in a particular social group, or political opinion." INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). If the alien establishes past persecution in his country based upon a protected ground, "it is presumed that his life or freedom would be threatened upon return to his country," *Sanchez Jiminez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1238 (11th Cir. 2007) (quotation marks and citation omitted); however, an alien

---

them to Egypt. As a result, the German government took temporary custody of the children. Later, the German court said the children had to remain in foster care until Zakaria was able to provide for them financially. These two children are still wards of the German foster care system, even though Zakaria, his new wife and their children currently reside in Florida.

who cannot show past persecution can still qualify for withholding of removal by showing that he would more likely than not be persecuted on account of a protected ground. *Id*.

To qualify for protection under the CAT, Zakaria must establish that it is more likely than not that he will be tortured upon repatriation. 8 C.F.R. § 208.16(c)(2). Torture is defined as

> any act by which pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . for any reason based on discrimination when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1).

Here, the BIA did not err in concluding that Zakaria was not entitled to relief. There is substantial evidence in the record to support the BIA's and the IJ's determinations that Zakaria did not suffer harm amounting to past persecution. Although Zakaria was subject to harassment from his family, in the form of yelling and physical shaking, when he told them he converted to Christianity the events to not rise to the level of harm required for withholding from removal. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (finding that persecution is an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation.").

Moreover, the record supports the BIA's and the IJ's findings that Zakaria failed to show that he would more likely than not be subject to future persecution or torture upon a return to Egypt. The State Department Country Reports in evidence state that some members who have converted from Islam to Christianity experience problems once returning to Egypt. But the studies also report that many Christians worship without incident. Additionally, Zakaria's fears that he could be harmed by his family members who are members of the Muslim Brotherhood are offset by the record evidence that the Egyptian government, in power at the time the BIA reviewed Zakaria's claim, had banned the Muslim Brotherhood and worked, albeit sporadically, to curtail their illegal activities. Although we take notice of the current political situation in Egypt, we cannot say that this fact alone compels reversal of the BIA's decision. Thus, the possibility that Zakaria could face persecution when he returns to Egypt falls short of the "more likely than not" standard promulgated by the agency.

For the reasons set forth above, we conclude that the BIA did not err in finding Zakaria's application for asylum barred and in denying his petition for withholding of removal or CAT protections. Accordingly, Zakaria's petition is denied.

**PETITION DENIED**.

8